Ara Sahelian, Esq., [CBN 169257]
SAHELIAN LAW OFFICES
23046 Ave de la Carlota, Ste 600
Laguna Hills, CA 92653
Direct : 949 859 9200
Fax : 949 954 8333
email : sahelianlaw@me.com

Attorneys for Walter W. Carnwright; Marilyn K. Carnwright; Autoworks Specialists of Apple Valley, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### (Eastern Division - Riverside)

| | |
|---|---|
| Walter Ford<br>   Plaintiff,<br>vs.<br>Walter W. Carnwright, Marilyn K. Carnwright, Autoworks Specialists of Apple Valley, LLC<br>   Defendants. | CASE NO.: 5:19-cv-00997-FMO-AGR<br>THE HONORABLE FERNANDO M. OLGUIN<br><br>**POINTS AND AUTHORITIES TO SECOND MOTION TO DISMISS [FRCP 12(b)1]**<br><br>Hearing Date: 9/5/2019<br>Hearing Time: 10:00AM |

# POINTS AND AUTHORITIES TO
# SECOND MOTION TO DISMISS [FRCP 12(b)1]

## I. INTRODUCTION

This Motion is being made on behalf of Walter W. Carnwright; Marilyn K. Carnwright; Autoworks Specialists of Apple Valley, LLC (hereinafter also "Defendant"). On Friday, May 31, 2019, plaintiff Walter Ford (hereinafter also "Plaintiff"), filed the instant action against Defendant, in relation to , located at 22367 CA- 18, Apple Valley, California (hereinafter also, "Site"), asserting claims for "Americans With Disabilities Act and Unruh Civil Rights Act."

**Compliance with Local Rule 7-3:** Defendants' counsel met and conferred with opposing counsel for approximately 45 minutes, discussing every aspect of this case from trying to have an understanding of plaintiff's demand, to asking the Plaintiffs for greater specificity, and settlement. Exhibit A is a true and correct copy of the meet and confer correspondence I dispatched in advance of the conference. (Declaration of counsel, ¶3).

By way of background, the Court previously granted Defendants' motion to dismiss, providing Plaintiff an opportunity to amend the complaint. The first amended complaint (FAC) suffers from the same lack of specificity.

**Relief Sought:** the Court should dismiss the Complaint for its failure to allege Article III Standing. If Plaintiff is granted leave to amend, the Court should decline to exercise Supplemental Jurisdiction over the remaining state causes of action on the ground that Plaintiff is doing an end-around state law.

## II. DISCUSSION

**a. The Complaint Is Jurisdictionally Defective and subject to dismissal under Federal Rule of Civil Procedure 12(b)(1)**

"[F]ederal courts are required *sua sponte* to examine jurisdictional issues such as standing." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002); *United States v. Hays*, 515 U.S. 737, 742, (1995). The existence of Article III standing is not subject to waiver. *Hays, 515 U.S., at* 742. It must be demonstrated "at the successive stages of the litigation," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3). "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541(1986).

1. <u>Plaintiff Has Failed to Allege Facts Demonstrating the Existence of an Injury-In-Fact</u>.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Lujan, 504 U.S. at* 560. To that end, "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist." "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating" the existence of an injury in fact. *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

Plaintiff alleges he "went to Autoworks in May 2019 with the intention to avail himself of its services and to assess the business for compliance

with the disability access laws" FAC, ¶10). "On the date of the plaintiff's visit, the defendants did not provide accessible parking. " *Id.,* ¶1. Plaintiff claims he "personally encountered this barrier." *Id.,* ¶15 and that "defendants denied the plaintiff full and equal access" *Id.*, ¶16. Furthermore, "the lack of accessible parking created difficulty and discomfort for the Plaintiff." *Id.,* ¶17. "Plaintiff will return to Autoworks to avail himself of its services and to determine compliance with the disability access laws once it is represented to him that Autoworks and its facilities are accessible." *Id.,* ¶20.

Exhibit C is an aerial view of the subject property. As can be seen, there are several automobile repair shops along a long driveway leading to a staging area at the end. As can also be seen, there are no designated parking spaces for either the public or those with disabilities. (See Declaration of Counsel, ¶9.)

The Americans With Disabilities Act Architectural Guidelines mandate accessible parking spaces based on the number of ordinary parking spaces. For instance, one accessible parking space for each 25 ordinary parking spaces. Again, as clearly visible from the aerial shots, there are no designated parking spaces at all. Consequently, the law does not mandate accessible parking spaces to be provided.

Also clearly visible from the aerial view is the availability of parking near each entrance of each storefront. To be sure, Plaintiff testified at a deposition a few months ago that he was an amputee, that he did not drive a van, and as a result did not require a van accessible space. Instead, he testified he drove a pickup truck and was able to enter and exit the truck

from the passenger side, and store his wheelchair in the truck bed. See Declaration of Counsel, ¶6. Plaintiff can park anywhere he wishes along the storefronts, near each entrance. There are no restrictions to him parking any way he wishes. Moreover, he is able to park with the passenger side of his truck facing the wall, say 5 to 8 feet from the wall, eliminating the possibility of his exit from, and his entry into, his truck being in the way of traffic.

The complaint qualifies as a sham. Although Plaintiff alleges that he is physically disabled, and that he visited the Site and encountered architectural barriers that denied him full and equal access, he does not allege how his disability relates to the barriers so as to deny him the "full and equal" access that would satisfy the injury-in-fact requirement. In other words, the Complaint does not connect the alleged violations to Plaintiff's disability, or indicate how he encountered any one of them in such a way as to impair his full and equal enjoyment of the Site.

In 2011, an en banc panel met in *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 955 (9th. Cir. 2011) (en banc) to resolve intra-circuit conflicts on issues pertinent to the private enforcement of the ADA. The decision established the pleading standards as they apply to litigation under the ADA. *Chapman* is the only ADA-related en banc decision in the Ninth Circuit of which this attorney is aware. It is not often that the Ninth Circuit chooses to meet en banc. Rather, this rare event happens about twenty times a year out of nearly eleven thousand cases brought before the Court annually.

The Ninth Circuit noted its purpose in analyzing *Chapman* en banc: "We

vacated the panel's decision after a majority of our court's non-recused active judges voted to rehear the appeal en banc to examine the Article III standing doctrine in the context of actions for injunctive relief under the ADA." 631 F.3d at 944.

Among the issues the Court addressed was whether Chapman had sufficiently pleaded injury-in-fact to have Article III standing under the case-or-controversy principles established by the Supreme Court. *Chapman*, 631 F.3d at 954-55. In so doing, the *Chapman* court analyzed the established injury-in-fact requirements set out by the Supreme Court in *Lujan*, as they have been applied to ADA cases, in which injunctive relief is sought.

The en banc panel in *Chapman* concluded that both the District Court in Chapman, and the three-judge panel of the Ninth Circuit had missed the fact that the complaint was jurisdictionally defective on the grounds that none of the barriers alleged in the complaint were described to permit either the parties or the courts to understand how Chapman was personally affected by the barriers, or how they related to his specific disability, or if they related to his disability whatsoever. Further, the list of purported barriers did not indicate whether or how each deterred Chapman from returning to Pier 1. As a consequence, the *Chapman* court determined, the plaintiff failed to properly aver injury-in-fact or imminent harm, and thus "the district court should have dismissed" the ADA claims. *Id.* at 955.

> While we are mindful of the generous pleading standards that apply to civil rights plaintiffs, "a liberal interpretation of a . . . civil rights complaint may not supply essential elements of the

claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). Chapman's complaint fails to sufficiently allege the essential elements of Article III standing. Although Chapman alleges that he is "physically disabled," and that he "visited the Store" and "encountered architectural barriers that denied him full and equal access," he never alleges what those barriers were and *how his disability was affected by them so as to deny him the "full and equal" access that would satisfy the injury-in-fact requirement* (i.e., that he personally suffered discrimination under the ADA on account of his disability). (emphasis added). (*Id*. 954)

The Complaint filed by Chapman, in 2004 (attached herein as Exhibit B), was dismissed by the en banc panel in 2011. Here's a comparison of the central allegations of Chapman's complaint with that filed by the Plaintiff. Chapman's complaint was dismissed for lack of specificity. Plaintiff's complaint is equally if not more vague:

    Chapman: "Chapman has multiple conditions caused by a spinal cord injury that affects one or more major life functions. Chapman requires the use of a motorized wheelchair and a vehicle with a lift system to transport his motorized wheelchair one traveling about in public." Chapman complaint, ¶7.
    Plaintiff: "Plaintiff ... is an amputee and he is unable to walk. He uses a wheelchair for mobility." Complaint, ¶1.

    Chapman: "Attached as Exhibit A, is a true and accurate list, to the extent known by Chapman, (with photos) of the barriers that denied him access to the Store, or which he seeks to remove on behalf of others under related state statutes." *Id.,* ¶19.
    Plaintiff: "Unfortunately, on the date of the plaintiff's visit, the defendants did not provide any accessible parking. There was not a single parking space marked or reserved for use by

persons with disabilities and not a single parking space with an access aisle." *Id.,* ¶13.

Chapman: "Chapman visited the Store and actually encountered architectural barriers that denied him full and equal access." *Id.,* ¶18. "Chapman was denied the full and equal access (as required by United States and California statutes) during each visit to the Store." *Id.,* ¶20. "Chapman has suffered, or anticipates suffering, emotional and physical harm during each actual visit to the store, or incident of deterrence." *Id.,* ¶22. "Because of Pier 1's acts and omissions, Chapman suffered physical discomfort and injury, emotional distress, and mental suffering and distress." *Id.,* ¶24.

Plaintiff: "Plaintiff personally encountered this lack of accessible parking. As a person who uses a wheelchair and has disabled parking placards, the plaintiff is entitled to use and benefits from reserved accessible parking. The lack of accessible parking affects the plaintiff's type of disability." *Id.,* ¶15. "The lack of accessible parking created difficulty and discomfort for the Plaintiff." *Id.,* ¶17.

Chapman: "Pier 1 and Chapman know that areas of the store are inaccessible to the physically disabled." *Id.,* ¶16. "Chapman was also deterred from visiting the store, because of actual knowledge that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, for accommodations at the store was not available to physically disabled patrons." *Id.,* ¶ 21. "Chapman would visit the store, but for the future threat of discrimination by Pier 1." *Id.,* ¶23. "To date, Pier 1 has not made the Store readily accessible under Title III of the ADA." *Id.,* ¶29.

Plaintiff: "Plaintiff is in Apple Valley on a regular and ongoing basis and will be in Apple Valley on many occasions in the future. Plaintiff will return to Autoworks to avail himself of its services and to determine compliance with the disability access laws once it is represented to him that Autoworks and its facilities are accessible. Plaintiff is currently deterred from

doing so because of his knowledge of the existing barriers and his uncertainty about the existence of yet other barriers on the site." *Id.,* ¶20-21.

Similar to Chapman's complaint which was dismissed by the en band panel, the complaint filed by Plaintiff, here, is devoid of any explanation as to *how* the alleged barriers denied him full and equal access.

<u>The central question is *how*: how was plaintiff's disability affected by the alleged barriers so as to deny him full and equal access?</u>

A plaintiff must aver that he suffered an injury-in-fact that is concrete, particularized, and actual. Plaintiff alleges that he is physically disabled, that he visited the Site and encountered architectural barriers that denied him full and equal access, yet he does not allege *how* his disability relates to the alleged barriers so as to deny him the "full and equal" access. In other words, the Complaint does not connect the alleged violations to Plaintiff's disability, nor indicate how he encountered any one of them in such a way as to impair his full and equal enjoyment of the Site. Just as importantly, he does not allege whether he actually experience difficulty and how.

Plaintiff does not allege how he was harmed by the purported absence of an accessible parking space. He does not allege whether he tried to park, but could not; whether he parked at the street, but that the distance was too great, whether he attempted to park but other cars got in his way, whether he tried to park in front of any of the storefronts. There are no specifics, no details, as to *how* the purported absence of an accessible parking space affected his visit.

Similarly, Plaintiff offers no explanation as to how he is deterred from

going back.

Clearly, Plaintiff has averred no more than Chapman did 15 years ago. Plaintiff failed to meet the standing requirements set forth years ago in *Chapman*, and as such, the ADA claim should be dismissed.

2. <u>Plaintiff Has Also Failed to Allege an Injury-in-Fact that Is Imminent.</u>

Next, a plaintiff's intent to return must be sincere. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th. Cir. 2008) (Evidence of past patronage of the business, location within a reasonable distance from Plaintiff's residence and along a familiar bus route, plus a sincere intent to return could demonstrate an "actual or imminent" injury.) *Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1079. (D. Haw. 2000).

*D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031 is instructive. The plaintiff in *D'Lil*, a paraplegic, traveled to Santa Barbara on a work trip. Id. at 1034. After encountering access barriers during her stay at the Best Western Encina, she brought suit against the hotel. She "gave detailed reasons as to why she would prefer to stay at the Best Western Encina during her regular visits to Santa Barbara." *Id*. at 1039. Id. Her intent to return to the Santa Barbara area was evidenced by the regularity with which she visited the city before, during, and after her stay at the Best Western Encinata. By her declaration, and her testimony at the evidentiary hearing, D'Lil demonstrated that *she has been visiting the Santa Barbara area since the early 1980s for both business and pleasure*. From 1993 to 2000, she had visited approximately 1-3 times per year.

Here, there is no indication as to the location at which he resides and its distance from the Site, the number of times he has previously patronized the

Site, his relationship to the geographic area, and whether he has specific plans to return to the Site as opposed to "some day." Finally, no indication as to which barrier(s) deter him from revisiting the Site, and why he would want to revisit this particular Site, given there are other similar businesses in the area.

Plaintiff has not averred the necessary elements:

1. Distance from Plaintiff's residence to the Site;
2. Plaintiff's previous patronage of the business;
3. Plaintiff's connection to the geographic area; or
4. A credible and plausible plan to return.

Defendants should not have to commence costly discovery, for example, take the Plaintiff's deposition, only to discover that basic elemental facts Plaintiff should have pled in order to have standing under Article III are absent. For instance, had Plaintiff filed in State Court, he would need to aver: (1) an explanation of the specific access barrier or barriers encountered; (2) the way in which the barrier denied the individual full and equal access, or in which it deterred the individual on each particular occasion, and (3) the date/s when the claimant encountered the specific barriers.

In 2017 the 9th Circuit affirmed the dismissal of a complaint because his intent to return was not credible. *Rocca v. DEN* 109 LP, 684, Fed. Appx. 667, 669 .

> The district court held that Rocca lacked standing because he was not injured by any of those violations on his one visit, as he parked with no problem. The district court also found Rocca neither intended to return nor was deterred from doing so. The district court so concluded on the basis of the scant evidence of

>either mindset and its determination that Rocca was not credible. ... In particular, the district court found Rocca not credible because his stated purpose for visiting Denny's (a convenient stop en route to the beach), contradicted his true purpose ("to identify potential ADA violations") in light of Rocca's inconvenient route. The district court did not find Rocca not credible because he was an ADA "tester," which might have been legal error, see *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-75, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982); rather, the district court found Rocca not credible because he misrepresented the purpose of his visit. Because an ADA plaintiff seeking injunctive relief must show either an intent to return or deterrence from doing so to establish standing, and the district court did not err in finding that Rocca failed to show either, the district court did not err in concluding that Rocca lacked standing.

For the foregoing reasons, the Complaint is jurisdictionally defective and subject to dismissal under the Federal Rule of Civil Procedure 12(b)(1). Because Plaintiff lacks standing at the outset of this litigation to assert the ADA claims, the Court should dismiss them. Fed. R. Civ. P. 12(b)(1).

**b. The Complaint, in addition, Does Not Meet the Plausibility Standard and is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6)**

A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Ashcroft v. Iqbal, 556 U.S. 662, 664* or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Ninth Circuit stated that a complaint must be (1) "sufficiently detailed to give fair notice to the

opposing party of the nature of the claim so that the party may effectively defend against it," and (2) "sufficiently plausible that it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011).

Our analysis shows that Plaintiff has given Defendants insufficient facts from which Defendants can asses the claims made, meaning, little notice. Defendants should not have to incur costly discovery, or in the alternative be forced into making a business decision and settling without knowing the facts.

**c. The Court Should Decline to Exercise Supplemental Jurisdiction over the UNRUH Civil Rights Act Cause of Action.**

Injunctive relief is available in state court to high frequency ADA plaintiffs (as in Plaintiff here), along with damages under the Unruh Act, but plaintiffs choose district courts because they can file on an industrial scale, and feel secure that no matter what the outcome they will avoid reciprocal attorney's fees.

Plaintiffs avoid Cal. Civ. §55, and invoke 42 U.S.C. §12205 and Cal. Civ. §52(a) because Cal. Civ. §55 exposes a plaintiff to attorney's fees should he be unable to prevail, whereas the threshold is much higher under 42 U.S.C. §12205 and Cal. Civ. § 52(a).

To protect business owners from predatory litigation by high frequency plaintiffs, California has enacted legislation to make attorneys representing these plaintiffs accountable for baseless claims. California Code of Civil Procedure Section 425.50 (c) states in relevant part:

> A complaint alleging a construction-related accessibility claim

shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. By signing the complaint, the attorney or unrepresented party is certifying that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

These procedural requirements were enacted by the California Legislature for a reason. Declining jurisdiction over the Unruh Act would help direct these cases to state court, which is where they should be filed if plaintiffs seek statutory damages.

Respectfully submitted:
Date: 8/4/2019

_____
Ara Sahelian, Esq.
Attorney for Defendants