1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WALTER FORD,

                Plaintiff,

                v.

WALTER W. CARNWRIGHT, et al.,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)

Case No. ED CV 19-0997 FMO (AGRx)

**ORDER RE: SUMMARY JUDGMENT**

On May 31, 2019, plaintiff Walter Ford ("plaintiff") filed a complaint against Walter W. Carnwright, Marilyn K. Carnwright,[1] and Autoworks Specialists of Apple Valley, LLC ("Autoworks") (collectively, "defendants"), asserting claims under the Americans With Disabilities Act, 42 U.S.C. §§ 12101, et seq., and the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, et seq. (See Dkt. 1, Complaint at ¶¶ 22-32). On July 18, 2019, plaintiff filed the operative First Amended Complaint ("FAC") asserting the same claims. (See Dkt. 20, FAC at ¶¶ 23-32). Having reviewed and considered the parties' cross-motions for summary judgment[2], (Dkt. 52, "Motion"), the court finds

---

[1]  Walter and Marilyn Carnwright are being sued in both their individual and representative capacity as trustees of the Carnwright Family Trust Dated 7-19-04.

[2]  The Motion and the caption page of the Joint Brief refer only to plaintiff's motion for summary judgment, but defendants make clear that they also seek summary judgment as to plaintiff's claims. (See Dkt. 52-1, Plaintiff's and Defendant[s'] Joint Brief Re Plaintiff's Motion for Summary Judgment ("Mem.") at 30) ("Defendants respectfully request the Court GRANT

that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

The parties are familiar with the facts and the court will only repeat them as necessary. The parties both seek summary judgment on plaintiff's ADA and Unruh Act claims. (See Dkt. 52-1, Mem. at 27-30). "In the disability context, California's Unruh Civil Rights Act operates virtually identically to the ADA." Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007); Schutza v. Cuddeback, 262 F.Supp.3d 1025, 1029 (S.D. Cal. 2017) ("The Unruh Act also provides that a violation of the federal ADA constitutes a violation of § 51 of the Unruh Act."). Thus, "[a]ny violation of the ADA necessarily constitutes a violation of the Unruh Act." Molski, 481 F.3d at 731.

"Title III of the ADA prohibits discrimination by public accommodations[.]" Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc., 603 F.3d 666, 669 (9th Cir. 2010). "To prevail on a discrimination claim under Title III [of the ADA], a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." Id. at 670. The ADA Accessibility Guidelines ("ADAAG") "lay out the technical structural requirements of places of public accommodation." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011) (en banc) (internal quotation marks omitted). "The ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." Id. at 945-46.

As a preliminary matter, defendants argue that "Plaintiff has failed to allege facts demonstrating the existence of an injury-in-fact" sufficient to confer Article III standing. (See Dkt. 52-1, Mem. at 23). "[A] disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." Chapman, 631 F.3d at 946. To establish standing, a plaintiff must allege he or she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

Defendants' Motion Summary Judgment and deny Plaintiff's.").

1    and (3) that is likely to be redressed by a favorable judicial decision."[3] Spokeo, Inc. v. Robins, 136

2    S.Ct. 1540, 1547 (2016).

3          Defendants contend that plaintiff "visited the Site and encountered architectural barriers that

4    denied him full and equal access, yet he does not allege how his disability relates to the alleged

5    barriers so as to deny him the 'full and equal' access." (Dkt. 52-1, Mem. at 25) (emphasis

6    omitted).   "[A]n ADA plaintiff can establish standing to sue for injunctive relief either by

7    demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a

8    noncompliant facility." Chapman, 631 F.3d at 944. Plaintiff states that the "lack of disabled

9    parking spaces at the Autoworks caused [him] anxiety, frustration and difficulty" which "deterred

10   him from visiting the Autoworks[,]" which is "only five minutes away from [his] home." (Dkt. 52-6,

11   Exh. 2, Declaration of Walter Ford in Support of [Plaintiff's] Motion for Summary Judgment ("Ford

12   Decl.") at ¶¶ 9-11); (see Dkt. 52-20, Exh. H, Deposition Transcript of Walter Ford at 44-48)

13   (Plaintiff's deposition testimony corroborating statements in his declaration that he visited the

14   property and was unable to park).  Also, plaintiff claims that he intends to return to the property

15   "on a regular basis or whenever the need arises." (Dkt. 52-6, Exh. 2, Ford Decl. at ¶ 12). Under

16   the circumstances, the court is persuaded that plaintiff has standing to sue for injunctive relief

17   under the ADA.

18          With respect to the merits of plaintiff's claims, defendants do not dispute that plaintiff is

19   disabled or that they own and operate a place of public accommodation. (See, generally, Dkt. 51-

20   1, Mem.).  The dispute here arises from the third element, i.e., whether defendants denied plaintiff

21   full and equal access to a place of public accommodation because of his disability. (See Dkt. 52-

22   1, Mem. at 19-21).  Autoworks, as a place of public accommodation, may not discriminate against

23   any person "on the basis of disability in the full and equal enjoyment of the goods, services,

24   facilities, privileges, advantages, or accommodations[.]"  42 U.S.C. § 12182(a).

25

26          [3]   "Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the

27   barrier) under the ADA . . . a defendant's voluntary removal of alleged barriers prior to trial can
     have the effect of mooting a plaintiff's ADA claim." Oliver v. Ralphs Grocery Co., 654 F.3d 903,

28   905 (9th Cir. 2011).

Having reviewed the parties' papers, it appears that there is at least one genuine issue of material fact.  First, there is a factual dispute as to whether Autoworks provides "parking" as a facility, privilege, or service to its customers.  Defendants contend that since "[t]here are no public parking spaces" at Autoworks, "no accessible parking is required."  (Dkt. 52-1, Mem. at 19). Indeed, defendants' expert states that "the driveway does not allow for vehicular parking" and "[t]he rear unpaved portion of the property, south side, is used for staging of vehicles being serviced, employee only parking, and for storage containers[,]" but "does not allow for any customer parking."  (Dkt. 52-18, Exh. F, Declaration of Expert Terry McLean, in Opposition to Plaintiff's Motion for Summary Judgment ("McLean Decl.") at ¶¶ 5(b)-(c)).  An Autoworks manager states that "[a]ll customers are asked to drop their cars off along the driveway" and "[w]hen a customer in a wheelchair visits us, we use the same procedure.  We ask him or her to drop the car off at the driveway, and then we help them in any which way they need."  (Dkt. 52-19, Exh. G, Declaration of Sheri Scott in Opposition to Plaintiff's Motion for Summary Judgment at ¶¶ 6-7). As defendant's expert explains, "all customers are expected to drop-off their vehicles.  The drop-off location for this business is at the front of the property within the drive aisle.  Once a vehicle is dropped-off an employee will either drive the vehicle into a service bay or to the rear staging area. . . . Since there is no public parking available, no accessible parking spaces are required." (Dkt. 52-18, Exh. F, McLean Decl. at ¶¶ 5(c)-(d)).

Plaintiff, on the other hand, contends that "Autoworks did not have a single accessible parking space meeting the [ADA] requirements on the date of Plaintiff's visit . . . [and] [d]efendants' failure to provide an accessible parking space is a violation of the ADA."  (Dkt. 52-1, Mem. at 18). In support of its argument, plaintiff submits a declaration from his investigator as well as his expert. (See Dkt. 52-7, Exh. 3, Declaration of Zion Sapien in Support of Plaintiff's Motion for Summary Judgment at ¶ 4) ("When I arrived at the Autoworks, I found that the parking lot serving the Autoworks offered approximately 10 parking spaces to its customers. However, none of the parking spaces in this parking lot were designated for use by persons with disabilities."); (Dkt. 52-9, Exh. 5, Declaration of Janis Kent in Support of Plaintiff's Motion for Summary Judgment at ¶ 11); (Dkt. 52-10, Exh. 6, Kent Report at 4) ("Since the facility does have space for parked vehicles,

1    one accessible van parking space needs to be provided at a minimum along with a path of travel

2    connecting to the offices as well as to the public right of way.").

3         Whether Autoworks provides parking for its customers is of course intertwined with the

4    issue as to what constitutes a parking facility within the meaning of the ADA.  But neither party

5    provided a definition as to what constitutes a "parking facility" under the ADA.[4]  (See, generally,

6    Dkt. 52-1, Mem.); (Dkt. 56, Plaintiff's Supplemental Brief); (Dkt. 57, Defendants' Supplemental

7    Statement).  Without such a definition, the court is unable to determine whether the area in dispute

8    constitutes a parking facility within the meaning of the ADA, i.e., whether Autoworks provides

9    parking for its customers.  Cf., e.g., Langer v. Kacha, 2016 WL 524440, *4-5 (S.D. Cal. 2016)

10   (ADA case dismissed for lack of standing where evidence was undisputed that restaurant "never

11   provided parking to patrons except during a brief period of construction.").

12        Second, even assuming the subject area constitutes a parking facility within the meaning

13   of the ADA, plaintiff fails to plausibly demonstrate that removal of the architectural barrier is readily

14   achievable.  "[P]laintiffs have the initial burden at summary judgment of plausibly showing that the

15   cost of removing an architectural barrier does not exceed the benefits under the particular

16   circumstances."  Lopez v. Catalina Channel Express, Inc., 2020 WL 5405677, *3 (9th Cir. 2020).

17   "[O]nly if the plaintiff first makes a plausible showing that the barrier removal is readily achievable,

18   does the defendant then have to negate that showing and prove that the removal is not readily

19   achievable."  Id. at *4 (emphasis omitted).   Here, although plaintiff describes the ADAAG

20   requirements for an accessible parking space, plaintiff summarily concludes that "[d]efendants'

21   failure to provide an accessible parking space is a violation of the ADA[,]" (see Dkt. 52-1, Mem.

22   at 16-18), and does not "articulate a plausible proposal for barrier removal, 'the costs of which,

23   facially, do not clearly exceed its benefits[.]'" Lopez, 2020 WL 5405677, at *6.  In short, the court

24   will deny the parties' cross-motions for summary judgment.

25        **This Order is not intended for publication.  Nor is it intended to be included in or**

26

27

28        [4]    The ADA accessibility standards set forth a myriad of requirements for "accessible"
     parking, none of which need to be addressed at this time.

1 | **submitted to any online service such as Westlaw or Lexis.**

2 |   Based on the foregoing, IT IS ORDERED THAT the parties' cross-motions for summary

3 | judgment **(Document No. 52)** are **denied**.

4 | Dated this 29th day of September, 2020.

5 |

6 |               /s/

           Fernando M. Olguin

7 |           United States District Judge